UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNIE CABANA RIPOYLA,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:22-cv-01220-CDB (SS)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRMING DECISION OF COMMISSIONER OF SOCIAL SECURITY<br><br>(Docs. 21, 23) |

Plaintiff Ronnie Cabana Ripoyla ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits under the Social Security Act ("SSA" or "Act").  (Doc. 1).  The matter is before the Court on the Administrative Record (Doc. 14, hereinafter "AR") and the parties' briefs (Docs. 21, 23), which were submitted without oral argument.  Upon review of the record, the Court finds and rules as follows.[1]

I.     **BACKGROUND**

   A.     **Administrative Proceedings and ALJ's Decision**

   On October 31, 2019, Plaintiff filed an application for supplemental security income with an alleged disability onset date of March 3, 2018.  (AR 131).  Plaintiff's claim was initially denied

_____

[1] On October 27, 2022, after the parties consented to the jurisdiction of a U.S. Magistrate Judge for all further proceedings pursuant to 28 U.S.C. § 636(c)(1), this action was reassigned to a U.S. Magistrate Judge.  (Doc. 13).

on March 30, 2020, and again upon reconsideration on May 6, 2020. *Id.* Plaintiff requested a hearing before an Administrative Law Judge on May 13, 2020. *Id.* Charles Woode, the Administrative Law Judge ("ALJ"), held a telephone hearing on September 1, 2021, during which Plaintiff, represented by counsel Malina Davies, and impartial vocational expert Diana L. Kizer ("VE") testified. *Id.* During the hearing, and upon consultation with Plaintiff, the representative amended the alleged onset date to October 31, 2019. *Id.* The ALJ issued an unfavorable decision on September 28, 2021, finding Plaintiff was not disabled.[2] (AR 1, 128, 134-144). The Appeals Council denied Plaintiff's request for review on July 26, 2022, rendering the ALJ's decision as the final decision of the Commissioner. (AR 1). Plaintiff subsequently filed this action seeking judicial review of the ALJ's decision. (Doc. 1).

In the decision, the ALJ considered Plaintiff's claims using the five-step sequential evaluation required by 20 C.F.R. § 416.920(a). (AR 134-144). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 31, 2019, the application date. (AR 134).

At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments ("MDIs") which significantly limit the ability to perform basic work activities as required by Social Security Ruling ("SSR") 85-28: diabetes; hypertension; hypotension; gastritis; depressive disorder; and post-traumatic stress disorder ("PTSD"). *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment, or any combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (AR 135). The ALJ considered the severity of Plaintiff's mental impairments, considering whether the four broad functional areas of mental functioning listed in the "paragraph B" criteria are satisfied.[3]

---

[2] The ALJ noted that Plaintiff was previously found not disabled by another ALJ (Matilda Surh) on April 3, 2018, based on his previous application for supplemental security income filed on July 28, 2015, because Plaintiff was capable of performing other work that existed in significant numbers in the national economy. (AR 131).

[3] The "paragraph B" criteria are not at issue in this action and, accordingly, not addressed further by the Court.

2

Because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, and do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities, the ALJ found the paragraph B criteria were not satisfied and that the mental impairments are non-severe. (AR 136). The ALJ also found that the evidence in this case fails to establish·the presence of "paragraph C" criteria.[4] *Id.*

Prior to step four, the ALJ found that Plaintiff has the RFC to perform medium work as defined in 20 C.F.R. 416.967(c) except for the following non-exertional limitations:

> [Plaintiff] can frequently stoop, kneel, crouch, crawl, climb ramps or stairs, and handle bilaterally; can occasionally climb ladders, ropes, or scaffolds; should avoid concentrated exposure to hazards such as unprotected heights and dangerous moving mechanical parts; can understand, remember, and carry out simple, routine, and repetitive instructions or tasks; can have occasional contact with co-workers or supervisors; cannot have any contact with the public.

(AR 137). In considering Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ noted he followed the two-step process as set forth in 20 C.F.R. § 416.929 and SSR 16-3p, and 20 C.F.R. § 416.920c. *Id.* The ALJ found "after careful consideration of the evidence" that Plaintiff's MDIs could reasonably be expected to cause the alleged symptoms but that his statements concerning the intensity, persistence, and limiting effects of symptoms are not entirely consistent with the medical evidence and other record evidence. (AR 138). The ALJ, citing to Plaintiff's hearing testimony, mental health assessments, medical evidence, treatment notes, activities of daily living ("ADLs"), and prior administrative medical findings, determined that the evidence of record did not provide support for the existence of greater limitations above those assessed in the RFC regarding Plaintiff's impairments. (AR 140). The ALJ noted that he considered any weakness or fatigue caused by Plaintiff's diabetes, his heart conditions, and gastritis to be captured in a limitation to medium work with frequent postural activities and climbing limitations. The ALJ noted the limitations considered Plaintiff's full muscle strength and range of motion in his joints during the consultative examination, and the handling limitations give consideration to Plaintiff's

---

[4] "The "paragraph C" criteria are not at issue in this action and, accordingly, not addressed further by the Court.

reports of numbness, pain, and weakness in his hands. The ALJ further noted that: preventing further exposure to hazards considers the additional danger more exposure could cause because of fatigue or weakness; allowing Plaintiff to work with simple, routine tasks further accounts for his alleged memory lapses and any difficulty concentrating because of fatigue or pain; and allowing occasional contact with coworkers and supervisors and no contact with the public further accounts for Plaintiff's reports of anxiety and social isolation, while considering his generally cooperative demeanor and ability to perform activities like volunteering at the church. *Id.*

At step four, the ALJ determined that Plaintiff has no past relevant work under 20 C.F.R. 416.965. (AR 142). The ALJ found that Plaintiff is an individual closely approaching advanced age on the date the application was filed pursuant to 20 C.F.R. 416.963 and has at least a high school education. (AR 142-143). The ALJ found that transferability of job skills is not an issue here because Plaintiff does not have past relevant work pursuant to 20 C.F.R. 416.968. (AR 143).

At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. *Id.* The ALJ cited to laundry worker I, day worker, and industrial sweeper/cleaner based on the testimony of the vocational expert. *Id.* The ALJ concluded a finding of "not disabled" was appropriate under section 1614(a)(3)(A) of the Act since October 31, 2019, the date the application was filed. (AR 144).

### B.      Medical Record and Hearing Testimony

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

## II.      LEGAL STANDARD

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation

omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely. Social Security Act § 205, 42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id*.

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity," defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id*.

6

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## III.    ISSUES AND ANALYSIS[5]

Plaintiff seeks judicial review of the Commissioner's final decision denying his application and raises two issues:

1.    Whether the ALJ erred in failing to support the RFC with substantial evidence; and

2.    Whether the ALJ harmfully erred by failing his duty to develop the record.

(Doc. 21 at 5).

### A.    Whether the ALJ Erred in Failing to Support the RFC with Substantial Evidence Based on His Treatment of Medical Opinion Evidence

#### 1.    Parties' Contentions

Plaintiff asserts that the RFC is not supported by substantial evidence for two reasons. First, there is no indication that the state agency physician opinions of Dr. Wong and Dr. Bitonte, on which the ALJ relied, took into consideration evidence of Plaintiff's physical impairments after February 10, 2020, and the opinions did not discuss Plaintiff's chronic diarrhea, gastritis, and gastrointestinal impairments. As such, the ALJ did not consider gastritis a severe impairment and did not include any limitations related thereto in the RFC. Second, the ALJ did not properly consider the supportability and consistency of the opinions he relied on and of the opinion of treating physician Dr. Long, which he rejected. *See* (Doc. 21 at 12-25). In short, Plaintiff asserts the ALJ improperly relied on the opinions of Dr. Bionte and Dr. Wong while he improperly rejected the opinion of Dr. Long.

Defendant contends that substantial evidence supports the ALJ's assessment of the RFC, the medical opinion evidence, and the prior administrative medical findings. (Doc. 23 at 3). Defendant argues that the ALJ properly formulated the RFC based on the record as a whole in

---

[5] Filings are referenced herein according to the associated CM/ECF-designated pagination.

finding that Plaintiff's gastritis was a severe medically determinable impairment at step two, discussing the evidence related to that impairment, and considering the medical opinion of Plaintiff's treating physician Dr. Logan. *Id.* at 4. Defendant contends the ALJ likewise considered Plaintiff's reported diarrhea in concluding that Plaintiff's reports of gastrointestinal problems varied and in limiting Plaintiff to medium work with frequent postural activities and climbing limitations to account for any weakness or fatigue caused by gastritis. *Id.* Defendant argues that the ALJ discussed the prior administrative medical findings ("PAMFs") of two state agency medical consultants who both recommended that Plaintiff could perform medium work with limitations, and the ALJ properly found these PAMFs persuasive as supportable and consistent with the record under the operative regulations for evaluating medical evidence. *Id.* at 5. Defendant asserts that Plaintiff's challenge to the ALJ's assessment of these PAMFs is unavailing because Plaintiff misconstrues the ALJ's discussion of the opinions and fails to identify any gastritis-related limitation. *Id.* at 6. Defendant contends that Plaintiff fails to show the PAMFs did not adequately review the February 2020 record or that the consultants did not review various of Plaintiff's self-reported alleged conditions, and Plaintiff has waived any challenge to the decision to the ALJ's discounting of his other symptoms. *Id.* at 6-7. Defendant argues that Plaintiff's complaint that Drs. Bitonte and Wong did not review various records misconstrues the RFC, which is a legal rather than a medical determination. *Id.* at 8. As to the medical opinion of Dr. Logan, Defendant asserts the ALJ reasonably found that opinion was not persuasive as Dr. Logan diagnosed Plaintiff with gastroparesis despite failing to list any clinical findings or objective signs related to gastroparesis in his opinion, and the opinion was not supportable or consistent under the regulations. *Id.* at 10-11.

                    2.    Governing Authority

        Because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the agency's newest regulations applicable to an ALJ's evaluation of medical opinions. 20 C.F.R. § 416.920c. Under these regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [a plaintiff's] medical sources." 20 C.F.R. §§

8

404.1520c(a), 416.920c(a). Thus, the regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources. *See* 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). In other words, "[s]upportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 404.1520c(b)(2)-(3). Further, the ALJ is "not required to articulate how [he]

considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Nonetheless, the Court must determine whether the ALJ adequately explained "how [he] considered the supportability and consistency factors" relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence. *Woods*, 32 F.4th at 792-93.

### 3: Dr. Bitonte's Opinion

Dr. R. Bitonte authored a disability determination explanation on March 3, 2020, concluding that Plaintiff is not disabled based on his documented findings. (AR 111). In the opinion, Dr. Bitonte noted that he considered the medical opinion of Dr. Steven Stoltz dated March 11, 2020, the previous ALJ decision dated November 4, 2019, and other documents, and made findings of fact with analysis of evidence, including his objective findings based on the record evidence and recommendations. (AR 98-101; 101-03). He noted Plaintiff has severe MDIs of peripheral neuropathy, peripheral arterial disease, and depressive, bipolar, and related disorders. (AR 103) and assessed that the medical opinion of Dr. Stotlz is an overestimate of Plaintiff's limitations. (AR 105). He assigned an RFC to Plaintiff with the following limitations: occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk and sit for a total of six hours in an eight-hour workday; push and/or pull unlimited other than shown for lift and/or carry; postural limitations in frequently climbing ramps/stairs, occasionally climb ladders, ropes, or scaffolds, frequently stoop, kneel, crouch, and crawl; environmental limitations in avoiding concentrated exposure to hazards and avoiding heights, heavy machinery, and uneven terrain. (AR 105-106). Dr. Bitonte rated Plaintiff's social interaction limitations as "moderately limited" with respect to interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, and maintaining socially appropriate behavior and to adhering to basic standards of neatness and cleanliness. (AR 108). He rated Plaintiff's adaptation limitations as "moderately limited" with respect to his abilities to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. (AR 108-109). Dr. Bitonte assessed Plaintiff has a medium work RFC. (AR 110).

### 4. Dr. Wong's Opinion

Dr. Wong rendered a disability determination explanation on May 5, 2020, that largely

mirrors the opinion of Dr. Bitonte.  *See* (AR 112-126).

### 5.    Dr. Logan's Opinion

Dr. Logan documented his patient visit with Plaintiff on July 8, 2020, and noted Plaintiff's diagnoses and his complaints, including fullness with eating with intermittent constipation and diarrhea.  (AR 592-93).  As to gastrointestinal issues, Dr. Logan identified Plaintiff was positive for abdominal pain, constipation, diarrhea, and nausea, and was negative for blood in stool, heartburn, and vomiting.  *Id.*  He assessed Plaintiff's various treatment plans with his impairments.  (AR 594-95).  Dr. Logan noted that Plaintiff was to return around September 8, 2020, for "lab results, diabetes."  (AR 598).  Dr. Logan thereafter maintained follow-up progress notes.  *See generally* (Ex. B7F).

### 6.    Analysis

Plaintiff asserts the ALJ improperly found the medical opinions of Disability Determination Services consultants Dr. Bitonte and Dr. Wong persuasive while he improperly found unpersuasive the opinion of Dr. Long.

The ALJ found the opinions of Dr. Bitonte and Dr. Wong persuasive as generally consistent with and supported by the record, noting that each opined that Plaintiff could perform medium work with frequent postural activity, frequent climbing or ramps and stairs, occasional climbing or ladders, ropes, or scaffolds, and avoidance of concentrated exposure to hazards.  (AR 140) (citing Exs. B4A, B5A); (AR 141).  The ALJ found that their opinions are supported by their narrative review of the record, including Plaintiff's mild edema noted in his legs and his normal function in his extremities.  *Id.*  The ALJ concluded that these opinions "are generally consistent with [Plaintiff's] function during the consultative examination, including [his] decreased range of motion in his back, but also including [his] negative straight leg testing and normal range of motion in his other joints[.]"  (AR 140-141) (citing Ex. B2F).  The ALJ acknowledged that he added limitations involving handling based on Plaintiff's testimony that he has pain and numbness in his hands.

While Plaintiff acknowledges the operative supportability/consistency framework that governs this Court's review of the ALJ's assignment of a medical opinion's persuasiveness (Doc.

21 at 20-22), the arguments he advances largely are generalized and overbroad. For instance, Plaintiff asserts that Dr. Bitonte and Dr. Wong "fail to engage in any discussion or review of Mr. Ripoyla's objective medical evidence as a whole." *Id*. at 20. Although Plaintiff complains that these opinions did not consider any evidence regarding Plaintiff's physical impairments after February 2020 and did not adequately address the February 2020 record, and separately, that they omitted any discussion of Plaintiff's alleged chronic diarrhea and gastritis, Plaintiff does not challenge the supportability or consistency of these opinions based on the evidence on which the doctors relied.

Nor does Plaintiff challenge based on supportability or consistency factors the non-finding by Dr. Bitonte and Dr. Wong of gastritis-related limitations, nor the ALJ's conclusion that the opinions were "generally consistent with the record as a whole" and were supported by a "detailed explanation … [that] typically would increase the supportability and persuasiveness of [the] opinions." *See Woods*, 32 F. 4th at 791-92; *Jones v. Saul*, No. 2:19-CV-01273 AC, 2021 WL 620475, at *8 (E.D. Cal. Feb. 17, 2021) ("the ALJ must explain how the agency considered the supportability and consistency of a medical opinion.… [T]he ALJ [is not allowed] to forego articulation of their 'reason or reasons' altogether; rather, [the new regulations] provide specific articulation requirements."). Indeed, the ALJ restricted the RFC to medium work consistent with Dr. Bitonte and Dr. Wong's assessed limitations and acknowledged the RFC took into account any weakness or fatigue caused by Plaintiff's alleged physical impairments, including his gastritis. (AR 140). Because the ALJ properly considered the supportability and consistency of Dr. Bitonte and Dr. Wong's opinions in formulating the RFC, Plaintiff fails to show the RFC is not supported by substantial evidence based on the ALJ's reliance on these opinions. *Woods*, 32 F.4th at 792-93.

As to Plaintiff's treating physician Dr. John Logan, the ALJ found his two opinions—first in August 2020, and second in February 2021—unpersuasive. (AR 141-142). The ALJ found Dr. Logan's assessed limitations in August 2020 unpersuasive because the opinion was not supported by his treatment notes which document generally unremarkable physical examinations and no enema. (AR 141) (citing Ex. B7F). The ALJ found that the opinion was inconsistent with other treatment notes and evaluations which did not document difficulty with Plaintiff's hands or

shoulders and thus do not support Dr. Logan's assessed limitations in the upper extremities. The ALJ further acknowledged the opinion was inconsistent with Plaintiff's observations during the consultative examination, including negative straight leg testing, normal range of motion of the joints, and full muscle strength and sensation. *Id.* (citing Ex. B2F). The ALJ pointed out that Dr. Logan noted these limitations went back four years despite Dr. Logan seeing Plaintiff for the first time only one month prior. The ALJ therefore found that Dr. Logan's August 2020 opinion was inconsistent and unsupported by the record, and accordingly, deemed it unpersuasive.

As to Dr. Logan's February 2021 opinion, the ALJ likewise found the opinion unpersuasive. The ALJ acknowledged that the opinion's lack of limitations in Plaintiff's upper extremities was better supported by Dr. Logan's treatment notes but that the opinion otherwise is not supported by Dr. Logan's generally unremarkable physical examination findings. The ALJ found that Dr. Logan's assessed limitations as to lifting, postural, climbing, and walking, were inconsistent with the findings from the consultative examination and with Plaintiff's reports that he could still care for his personal needs, leave his home by himself, perform household chores, and make simple meals. (AR 141-142).

Here, the ALJ properly found and supported with adequate reasoning that Dr. Logan's opinions were inconsistent with the record medical evidence, including findings from the March 2020 consultative examination documenting Plaintiff's edema, normal range of motion in his joints, and full muscle strength and sensation. *See* (AR 139) (citing Ex. B5F). Further, the ALJ properly discounted Dr. Logan's August 2020 opinion in finding the opinion unsupported by his own treatment notes which showed generally unremarkable physical examination findings and did not assess any enema. (AR 542); *see Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir. 2014) ("A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider."); *Lopez v. Berryhill*, No.: 1:17-cv-01501-BAM, 2019 WL 1325862, at *6 (E.D. Cal. Mar. 25, 2019) ("An ALJ may properly reject a treating physician's opinion that is unsupported by his own treatment notes."); *e.g.*, *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) ("[T]he ALJ properly found that Dr. Magsarili's extensive conclusions regarding Connett's limitations are not supported by his own

treatment notes. Nowhere do his notes indicate reasons why Connett would be limited to standing for only ten minutes or lifting only ten pounds, nor do they indicate that Dr. Magsarili ever recommended such limitations to Connett."). Therefore, the ALJ did not err in discounting the opinion of Dr. Logan in assessing the RFC.

Plaintiff separately argues that the RFC is not supported by substantial evidence as to the severity of his gastritis. Plaintiff notes that the prior RFC decision on which the state agency physicians relied did not consider gastritis as a severe impairment and, thus, it was incumbent on the ALJ to cite substantial evidence in support of any such finding and associated RFC limitations. (Doc. 21 at 13). But the ALJ expressly noted he was not relying "verbatim" on the prior ALJ's findings with respect to impairments because of "new and material medical evidence." (AR 134). And the ALJ thereafter cited new evidence he considered, including Plaintiff's hospitalization at the end of April 2020 during which he was treated for gastritis (AR 139) (citing Exhibit B11/F5) and expressly noted the RFC took into account accommodations for gastritis (AR 140).

Because the ALJ properly considered the supportability and consistency of the medical opinion evidence of Drs. Bitonte and Dr. Wong in finding those opinions persuasive, the ALJ's assessed RFC which relied on these opinions is supported by substantial evidence.

**B.    Whether the ALJ Harmfully Erred by Failing His Duty to Develop the Record**

1.    Parties' Contentions

Plaintiff contends that the ALJ, by referring to what he deemed "ambiguous" and "intermittent" evidence regarding Plaintiff's chronic diarrhea as opposed to Plaintiff's vomiting, bloody stools, gastritis, and gastroparesis, had (but failed to discharge) a duty to develop the record and send Plaintiff to a gastrointestinal consultative examiner, contact Plaintiff's treating physician, or call a medical examiner to review the record as a whole to clarify the ambiguous issues. (Doc. 21 at 25, 27).

Defendant contends that Plaintiff forfeited his "duty to develop" argument because Plaintiff's counsel represented to the ALJ at the hearing that the record was complete and did not request the ALJ to develop the record further. (Doc. 23 at 13-14). Defendant argues that alternatively, the ALJ had no duty to develop the record because the record was neither ambiguous

14

nor inadequate for decision, and Plaintiff does not contend that the record was inadequate. *Id.* at 14; *see id.* at n. 22. Defendant characterizes Plaintiff's claims of ambiguity, based on the ALJ's finding of intermittent notations of diarrhea in the record, as misplaced and argues Plaintiff conflates intermittent or minimal indicia of a symptom in the record with ambiguity. *Id.* at 14. Defendant likewise argues Plaintiff's reference to an unspecified, potential issue with his alleged gastrointestinal diagnoses and conditions does not render the record ambiguous nor establishes disability during the relevant time. *Id.* at 15. Defendant argues that Plaintiff's argument fails because he improperly shifts his burden of proving disability to the ALJ. *Id.*

## 2. Governing Authority

Generally, "[t]he claimant has the burden of proving that she is disabled." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). However, "[t]he ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered … even when the claimant is represented by counsel.'" *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). Further, "[w]hen a claimant is not represented by counsel, this responsibility is heightened." *Id.* This is because "Social Security proceedings are inquisitorial rather than adversarial." *Schiaffino v. Saul*, 799 F. App'x 473, 476 (9th Cir. 2020) (quoting *Sims v. Apfel*, 530 U.S. 103, 111-12 (2000)). In particular, the ALJ's duty to develop the record is heightened where the claimant may be mentally ill and thus unable to protect her own interests. *Tonapetyan v. Halter*, 242 F.3d 1133, 1150 (9th Cir. 2001) (citing *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992)).

Nevertheless, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)); *see Brown v. Berryhill*, 697 F. App'x 548, 549 (9th Cir. 2017) ("Because the record evidence was not ambiguous and the record was sufficient to allow for proper evaluation of the evidence, the ALJ was not required to re-contact Brown's doctors or further develop the record.").

///

15

3.    Analysis

First, the Court agrees that Plaintiff's argument was forfeited. Where a claimant seeking district court review is represented by counsel, he "must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Malinda Davies, Plaintiff's counsel at the hearing (AR 25-26), did not ask the ALJ to further develop the record. Because Plaintiff failed to raise the issue of the need to develop the record or for a consultative examination regarding his gastrointestinal issues before the ALJ, he has forfeited his arguments regarding the duty to develop the record. *See Marin v. Comm'r of Soc. Sec.,* No. 1:24-cv-00055-SAB, 2024 WL 3845357, at *9 n.8 (E.D. Cal. Aug. 16, 2024) ("[T]he Court notes that the weight of authority finds that the argument is forfeited by failing to raise the issue of the need for a consultative examination before the ALJ."); *Puchert v. Comm'r of Soc. Sec.*, No. 2:22-CV-2177-DMC, 2024 WL 991639, at *8 (E.D. Cal. Mar. 7, 2024) ("Given that Plaintiff was represented by counsel during the administrative proceedings and never sought a new examination, the argument that the ALJ failed to develop the record is foreclosed."); *Jones v. Kijakazai*, No. 2:22-cv-00909-EFB (SS), 2023 WL 3955679, at *5 (E.D. Cal. June 12, 2023) (same).

Notwithstanding Plaintiff's forfeiture, Plaintiff has not demonstrated any error warranting remand. "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Plaintiff does not argue the record is inadequate, nor did the ALJ find the record inadequate. Indeed, Plaintiff's counsel at the hearing affirmed the record was complete. Plaintiff's attempt to show the record is ambiguous based on the ALJ's finding of intermittent notations of diarrhea in the record is unavailing. The ALJ addressed the materiality of these intermittent findings in the record as he opined that "[t]he record contains minimal reports of diarrhea through the rest of 2021" and that Plaintiff's "reports of gastrointestinal problems have varied. Although there are intermittent notations of diarrhea in the record, [Plaintiff's] testimony that he has diarrhea every two days is not found in the treatment record." (AR 139). Moreover, "[b]ecause it is Plaintiff's burden to present evidence in support of [his] alleged disability, the mere absence of a report from a treating or examining physician does not give rise to

16

a duty to develop the record." *Cindy T. v. Kijakazi*, No. 21-cv-00005, 2022 WL 16633010, at *3 (S.D. Cal. Sept. 23, 2022).

Therefore, Plaintiff fails to show how the record is ambiguous such that the ALJ had a duty to develop the record on this evidence.

## IV. CONCLUSION AND ORDER

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 21) is DENIED.

2. The ALJ's decision (Doc. 14) is AFFIRMED; and

3. The Clerk of the Court shall enter judgment in favor of Defendant, terminate any deadlines, and close this case.

IT IS SO ORDERED.

Dated:   **January 28, 2026**

_____
UNITED STATES MAGISTRATE JUDGE